E. MARTIN ESTRADA
United States Attorney
CAMERON L. SCHROEDER
Assistant United States Attorney
Chief, National Security Division
KATHRYNNE N. SEIDEN (Cal. Bar No. 310902)
Assistant United States Attorney
Terrorism and Export Crimes Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0631
    Facsimile: (213) 894-0141
    E-mail:    kathrynne.seiden@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 8:23-100(B)-CJC-2 |
|---|---|
|     Plaintiff, | PLEA AGREEMENT FOR DEFENDANT TIBET ERGUL |
|         v. | |
| CHANCE BRANNON, TIBET ERGUL, and XAVIER BATTEN, | |
|     Defendants. | |

    1.   This constitutes the plea agreement between Tibet Ergul ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

<u>RULE 11(c)(1)(C) AGREEMENT</u>

    2.   Defendant understands that this agreement is entered into pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). Accordingly, defendant understands that, if the  Court determines

that it will not accept this agreement, absent a breach of this agreement by defendant prior to that determination and whether or not defendant elects to withdraw any guilty pleas entered pursuant to this agreement, this agreement will, with the exception of paragraph 23 below, be rendered null and void and both defendant and the USAO will be relieved of their obligations under this agreement. Defendant agrees, however, that if defendant breaches this agreement prior to the Court's determination whether or not to accept this agreement, the breach provisions of this agreement, paragraphs 26 and 27 below, will control, with the result that defendant will not be able to withdraw any guilty pleas entered pursuant to this agreement, the USAO will be relieved of all of its obligations under this agreement, and the Court's failure to follow any recommendation or request regarding sentence set forth in this agreement will not provide a basis for defendant to withdraw defendant's guilty pleas.

<u>DEFENDANT'S OBLIGATIONS</u>

3.   Defendant agrees to:

a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to both counts of a superseding information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with conspiracy to damage an energy facility in violation of 18 U.S.C. § 1366(a) and intentional damage to a reproductive health services facility in violation of 18 U.S.C. § 248(a)(3).

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement and affirmatively recommend to the Court that it impose sentence in accordance with paragraph 17 of this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h.   Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

i.   Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012.  Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

1          j.   Authorize the USAO to obtain a credit report upon

2     returning a signed copy of this plea agreement.

3          k.   Consent to the USAO inspecting and copying all of

4     defendant's financial documents and financial information held by the

5     United States Probation and Pretrial Services Office.

6          l.   The imposition of the following conditions of

7     probation or supervised release:

8               i.   The defendant shall submit defendant's person and

9     any property under defendant's control, including any residence,

10    vehicle, papers, computer and other electronic communication or data

11    storage devices and media, and effects, to suspicion-less search and

12    seizure at any time of the day or night by any law enforcement or

13    probation officer, with or without a warrant, and with or without

14    cause; and if stopped or questioned by a law enforcement officer for

15    any reason, defendant shall notify that officer that defendant is on

16    federal supervised release and subject to search.

17              ii.  The defendant shall not knowingly contact or

18    visit any Planned Parenthood or other reproductive healthcare

19    facility, or any employees, staff, or patients thereof, without prior

20    written approval from the United States Probation Office.

THE USAO'S OBLIGATIONS

22    4.   The USAO agrees to:

23         a.   Not contest facts agreed to in this agreement.

24         b.   Abide by all agreements regarding sentencing contained

25    in this agreement and affirmatively recommend to the Court that it

26    impose sentence in accordance with paragraph 17 of this agreement.

27         c.   At the time of sentencing, move to dismiss the

28    underlying indictment as against defendant.  Defendant agrees,

however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

     d.   Not further criminally prosecute defendant for violations of 26 U.S.C. § 5861 arising out of defendant's conduct described in the agreed-to factual basis set forth in paragraph 14 below.

<u>NATURE OF THE OFFENSES</u>

5.   Defendant understands that for defendant to be guilty of the crime charged in count one, that is, conspiracy to damage an energy facility, in violation of Title 18, United States Code, Section 1366(a), the following must be true:

     a.   There was an agreement between two or more persons to knowingly and willfully damage the property of an energy facility; and to cause significant interruption to or impairment of a function of the facility;

     b.   Defendant joined the agreement knowing of its object and intending to help accomplish it.

An "energy facility" means a facility that is involved in the production, storage, transmission, or distribution of electricity, fuel, or another form or source of energy, or research, development, or demonstrations facilities relating thereto, regardless of whether such facility is still under construction or is otherwise not functioning, except a facility subject to the jurisdiction, administration, or in the custody of the Nuclear Regulatory Commission or an interstate gas pipeline facility as defined in Section 60101 of Title 49.

6.    Defendant understands that for defendant to be guilty of the crime charged in count two, that is, intentional damage to a reproductive health services facility, in violation of Title 18, United States Code, Section 248(a)(3), the following must be true:

a.    Defendant intentionally damaged or destroyed the property of a facility;

b.    The facility provided reproductive health services; and

c.    Defendant acted because the facility provided reproductive health services.

Reproductive health services means reproductive health services provided in a hospital, clinic, physician's office, or other facility, and includes medical, surgical, counselling, or referral services relating to the human reproductive system, including services relating to pregnancy or the termination of a pregnancy.

<u>PENALTIES AND RESTITUTION</u>

7.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1366(a), is: 20 years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

8.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 248(a)(3), is: 12 months' imprisonment, a one-year period of supervised release; a fine of $100,000, or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $25.

9.   Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 21 years' imprisonment; a three-year period of supervised release; a fine of $350,000, or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $125.

10.   Defendant understands that defendant will be required to pay full restitution to the victims of the offenses to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result of any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty.  The parties currently believe that the applicable amount of restitution is approximately $1,000 but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

11.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could

result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

12.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

13.   Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.  The Court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case.  Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty pleas.

<u>FACTUAL BASIS</u>

14.   Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant

8

and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 16 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Beginning around February 2022, and continuing through at least March 13, 2022, within Orange County and elsewhere, defendant agreed and conspired with his co-defendant, Chance Brannon ("Brannon"), to use an explosive and destructive device, namely, a Molotov cocktail, to damage a commercial property used in an activity affecting interstate commerce.  Defendant became a member of the conspiracy knowing its objective and intending to help accomplish that objective.  Ultimately, they targeted a Planned Parenthood, a clinic open to the public which provides reproductive health services, including services related to pregnancies and the termination of pregnancies, such as abortions.  Defendant and Brannon targeted Planned Parenthood because it provided reproductive health services and because they wanted to make a statement against abortion, scare pregnant women away from obtaining abortions, deter doctors, staff, and employees of the clinic from providing abortions, intimidate and interfere with the patients of the clinic, and encourage others to engage in similar acts of protest.

On or about March 12, 2022, in defendant's garage in Orange County, California, defendant and Brannon put together a Molotov cocktail, which they knew was a destructive device.  Neither

1  defendant nor Brannon registered the Molotov cocktail with the

2  National Firearms Registration and Transfer record.

3      In the early morning of March 13, 2022, disguised in dark

4  clothing, hoods, masks, and gloves, defendant and Brannon drove to

5  the vicinity of a Planned Parenthood in Orange County, California.

6  Defendant and Brannon approached the entrance of the Planned

7  Parenthood, ignited the Molotov cocktail, and threw it at the clinic

8  entrance, intentionally starting a fire.  Defendant and Brannon then

9  fled.  Defendant and Brannon intentionally and successfully damaged

10 the clinic, which was forced to close temporarily and reschedule

11 approximately 30 patients' appointments.  The day after he and

12 Brannon started the fire, defendant bragged to an acquaintance about

13 having started the fire and noted that he wished he "could've

14 recorded the combustion."

15     In June 2022, following the Supreme Court's decision in Dobbs v.

16 Jackson Women's Health Organization, in which the Court overturned

17 Roe v. Wade, defendant and Brannon planned to use a second Molotov

18 cocktail, which they kept in a backpack in defendant's garage and did

19 not register with the National Firearms Registration and Transfer

20 record, to damage a second Planned Parenthood clinic.  Defendant and

21 Brannon did not follow through with their plan because they saw law

22 enforcement near the clinic they planned to target.  Defendant knew

23 that the second Molotov cocktail he possessed in his garage was a

24 destructive device.

25     Beginning sometime in 2022 and continuing through approximately

26 the time of their arrest, within Orange County, defendant conspired

27 and agreed with others, including Brannon, to knowingly and willfully

28 damage the property of an energy facility, namely, a Southern

California Edison electrical substation, and to cause significant interruption to and impairment of the facility's functioning. Defendant joined the agreement knowing its objectives and intending to help accomplish them.  Specifically, defendant and his coconspirators wanted to attack and debilitate Orange County's power grid.  Defendant and his coconspirators planned to do so using either firearms or the Molotov cocktail defendant possessed in his garage. Defendant and Brannon consulted with an associate about surveillance, drone operations, and firearms.

In March 2023, defendant messaged an associate to say that he had found a substation to target in Orange, California, which had a "fence area [] nearby enough to a switch."  Defendant also sent Brannon aerial photographs of the substation, suggested "go[ing] there at 3am one day" to do a "drive thru" and either climbing on the roof of a nearby building or throwing the Molotov cocktail "across the fence" to reach a "critical portion" of the substation.

At one point, defendant wrote Brannon a letter in which he stated: "The rifle is in a box in my room waiting to be used in the upcoming race war. . . VOTING DOESN'T CHANGE ANYTHING.  IF IT DID, IT WOULD BE ILLEGAL."  Defendant further wrote "Every single day spent alongside these godforsaken 2 party fags make me hate American politics more.  I have an unbelievable desire to murder journalists and politicians as soon as some chaotic event begins."

Throughout the early summer of 2023, defendant and Brannon also discussed and researched how to attack the parking lot or electrical room of Dodger Stadium on a night celebrating LGBTQ pride, including by using a remote-detonated device.  As part of those conversations, Brannon shared a "WW2 sabotage manual" with defendant and the two

11

discussed doing "dry runs" to "case" the stadium.  Defendant and
Brannon were arrested two days before the "Pride Night" at Dodger
Stadium.

SENTENCING FACTORS AND AGREED-UPON SENTENCE

15.  Defendant understands that in determining defendant's
sentence the Court is required to calculate the applicable Sentencing
Guidelines range and to consider that range, possible departures
under the Sentencing Guidelines, and the other sentencing factors set
forth in 18 U.S.C. § 3553(a).  Defendant understands that the
Sentencing Guidelines are advisory only.

16.  Defendant and the USAO agree to the following applicable
Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base offense level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Possession of a dangerous weapon: | +7 | U.S.S.G. § 2B1.1(b)(16) |
| Additional group 1-4 levels less serious:[1] | +2 | U.S.S.G. § 3D1.4(a) |
| Dismissed conduct: | +8 | U.S.S.G. § 5K2.21 |
| Aggravating circumstances: | +5 | U.S.S.G. §§ 5K2.0; 3A1.4 |
| Acceptance of Responsibility: | -3 | U.S.S.G. § 3E1.1 |
| Total Offense Level: | 26 | |
| Criminal History Category: | I | |

Guideline Range:                    63-78 months' imprisonment

---

[1] The parties agree that pursuant to U.S.S.G. § 3D1.2,
defendant's conviction under 18 U.S.C. § 248(a) constitutes a
separate group from his conviction under 18 U.S.C. § 1366(a).
Pursuant to U.S.S.G. § 2H1.1(a)(2), defendant's base offense level
for his conviction under § 248(a) is 12.

17.  The parties agree not to argue that any other specific offense characteristics, adjustments, or departures be imposed.

18.  Defendant and the USAO agree that, taking into account the factors listed in 18 U.S.C. § 3553(a)(1)-(7) and the relevant sentencing guideline factors set forth above, an appropriate disposition of this case is that the Court impose a sentence between 60 and 78 months' imprisonment; three years' supervised release with conditions to be fixed by the Court, to include the conditions listed in paragraph 3; a $125 special assessment; and $1,000 in restitution. The parties also agree that no prior imprisonment (other than credits that the Bureau of Prisons may allow under 18 U.S.C. § 3585(b)) may be credited against this stipulated sentence, including credit under Sentencing Guideline § 5G1.3.

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

19.  Defendant understands that by pleading guilty, defendant gives up the following rights:

      a.  The right to persist in a plea of not guilty.

      b.  The right to a speedy and public trial by jury.

      c.  The right to be represented by counsel – and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel – and if necessary have the Court appoint counsel – at every other stage of the proceeding.

      d.  The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

      e.  The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

20.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

21.   Defendant agrees that, provided the Court imposes the sentence specified in paragraph 18 above, defendant gives up the right to appeal any portion of that sentence, and the procedures and calculations used to determine and impose any portion of that sentence.

22.   The USAO agrees that, provided the Court imposes the sentence specified in paragraph 18 above, the USAO gives up its right to appeal any portion of that sentence, and the procedures and

1  calculations used to determine and impose any portion of that

2  sentence.

### RESULT OF WITHDRAWAL OF GUILTY PLEA

4      23.   Defendant agrees that if, after entering guilty pleas

5  pursuant to this agreement, defendant seeks to withdraw and succeeds

6  in withdrawing defendant's guilty pleas on any basis other than a

7  claim and finding that entry into this plea agreement was

8  involuntary, then (a) the USAO will be relieved of all of its

9  obligations under this agreement; and (b) should the USAO choose to

10  pursue any charge that was either dismissed or not filed as a result

11  of this agreement, then (i) any applicable statute of limitations

12  will be tolled between the date of defendant's signing of this

13  agreement and the filing commencing any such action; and

14  (ii) defendant waives and gives up all defenses based on the statute

15  of limitations, any claim of pre-indictment delay, or any speedy

16  trial claim with respect to any such action, except to the extent

17  that such defenses existed as of the date of defendant's signing this

18  agreement.

### RESULT OF VACATUR, REVERSAL OR SET-ASIDE

20      24.   Defendant agrees that if any count of conviction is

21  vacated, reversed, or set aside, or any enhancement imposed by the

22  Court to which the parties stipulated in this agreement is vacated or

23  set aside, the USAO may: (a) ask the Court to resentence defendant on

24  any remaining count of conviction, with both the USAO and defendant

25  being released from any stipulations regarding sentencing contained

26  in this agreement, (b) ask the Court to void the entire plea

27  agreement and vacate defendant's guilty pleas on any remaining counts

28  of conviction, with both the USAO and defendant being released from

all their obligations under this agreement, or (c) leave defendant's remaining conviction, sentence, and plea agreement intact.  Defendant agrees that the choice among these three options rests in the exclusive discretion of the USAO.

EFFECTIVE DATE OF AGREEMENT

25.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

26.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, (b) the USAO will be relieved of all its obligations under this agreement, and (c) the Court's failure to follow any recommendation or request regarding sentence set forth in this agreement will not provide a basis for defendant to withdraw defendant's guilty pleas.

27.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge

1  that was either dismissed or not filed as a result of this agreement,

2  then:

3          a.  Defendant agrees that any applicable statute of

4  limitations is tolled between the date of defendant's signing of this

5  agreement and the filing commencing any such action.

6          b.  Defendant waives and gives up all defenses based on

7  the statute of limitations, any claim of pre-indictment delay, or any

8  speedy trial claim with respect to any such action, except to the

9  extent that such defenses existed as of the date of defendant's

10  signing this agreement.

11          c.  Defendant agrees that: (i) any statements made by

12  defendant, under oath, at the guilty plea hearing (if such a hearing

13  occurred prior to the breach); (ii) the agreed to factual basis

14  statement in this agreement; and (iii) any evidence derived from such

15  statements, shall be admissible against defendant in any such action

16  against defendant, and defendant waives and gives up any claim under

17  the United States Constitution, any statute, Rule 410 of the Federal

18  Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal

19  Procedure, or any other federal rule, that the statements or any

20  evidence derived from the statements should be suppressed or are

21  inadmissible.

22          COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

23                          OFFICE NOT PARTIES

24      28.  Defendant understands that the Court and the United States

25  Probation and Pretrial Services Office are not parties to this

26  agreement and need not accept any of the USAO's sentencing

27  recommendations or the parties' agreements to facts, sentencing

28  factors, or sentencing.  Defendant understands that the Court will

17

determine the facts, sentencing factors, and other considerations relevant to sentencing and will decide for itself whether to accept and agree to be bound by this agreement.

29. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations and sentence referenced in paragraphs 16 and 17 are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

<u>NO ADDITIONAL AGREEMENTS</u>

30. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

31.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

E. MARTIN ESTRADA
United States Attorney

_____        2/14/2024
KATHRYNNE N. SEIDEN                      Date
Assistant United States Attorney

_____        2/14/2024
TIBET ERGUL                             Date
Defendant

_____        2/14/2024
SHEILA MOJTEHEDI                        Date
Attorney for Defendant Tibet Ergul

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has

19

1 advised me of my rights, of possible pretrial motions that might be
2 filed, of possible defenses that might be asserted either prior to or
3 at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),
4 of relevant Sentencing Guidelines provisions, and of the consequences
5 of entering into this agreement.  No promises, inducements, or
6 representations of any kind have been made to me other than those
7 contained in this agreement.  No one has threatened or forced me in
8 any way to enter into this agreement.  I am satisfied with the
9 representation of my attorney in this matter, and I am pleading
10 guilty because I am guilty of the charges and wish to take advantage
11 of the promises set forth in this agreement, and not for any other
12 reason.

_____          2/14/2024
TIBET ERGUL                              Date
Defendant

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am Tibet Ergul's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

_____          2/14/2024
SHEILA MOJTEHEDI                            Date
Attorney for Defendant TIBET ERGUL

## Exhibit A

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

9

10

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>TIBET ERGUL,<br><br>        Defendant. | CR No. 8:23-100(B)-CJC-2<br><br>S E C O N D<br>S U P E R S E D I N G<br>I N F O R M A T I O N<br><br>[18 U.S.C. § 1366(a): Conspiracy to Damage an Energy Facility; 18 U.S.C. § 248(a)(3): Intentional Damage to a Reproductive Health Services Facility] |

17    The United States Attorney charges:

18                            COUNT ONE

19                      [18 U.S.C. § 1366(a)]

20  A.   OBJECT OF THE CONSPIRACY

21        Beginning on an unknown date and continuing through

22  approximately June 14, 2023, in Orange County, within the Central

23  District of California, defendant TIBET ERGUL conspired and agreed

24  with Unindicted Co-Conspirator No. 1 ("UICC 1") and others to

25  knowingly and willfully damage the property of an energy facility,

26  namely, a Southern California Edison electrical substation, and to

27  cause significant interruption to and impairment of the facility's

28

functioning, in violation of Title 18, United States Code, Section 1366(a).

B.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

The object of the conspiracy was to be accomplished, in substance, as follows:

1.   UICC 1 would devise an operation plan and gear list to carry out an attack on a substation.

2.   Defendant ERGUL and UICC 1 would obtain weapons with which to commit the attack, to include firearms.

3.   Defendant ERGUL and UICC 1 would consult with others about how to carry out the attack.

4.   Defendant ERGUL would select an electrical substation to target.

5.   Defendant ERGUL, UICC 1, and others would use the firearms to shoot at critical components of the substation, thus damaging the substation and causing significant interruption to and impairment of the substation's functioning.

C.   OVERT ACTS

In furtherance of the conspiracy, and to accomplish its object, on or about the following dates, defendant ERGUL and others committed various overt acts within the Central District of California, including, but not limited to, the following:

Overt Act No. 1: On an unknown date, UICC 1 devised an operation plan and gear list for attacking a Southern California Edison substation, which he saved as a .txt file on a thumb drive titled "Delete after reading."

//

2

<u>Overt Act No. 2:</u> On an unknown date, UICC 1 obtained several of the items on the gear list, including a Zastava ZPap M70 rifle with a handwritten Cyrillic message translating to "total [n-word] death."

<u>Overt Act No. 3:</u> On an unknown date, defendant ERGUL obtained a rifle.

<u>Overt Act No. 4:</u> On an unknown date, defendant ERGUL and UICC 1 consulted with an associate about conducting surveillance, drone operations, and firearms.

<u>Overt Act No. 5:</u> On or about March 26, 2023, defendant ERGUL scouted substations in the Orange County area to determine possible targets for an attack.

<u>Overt Act No. 6:</u> On or about March 26, 2023, defendant ERGUL messaged UICC 1 and another associate to tell them he had selected a substation with a fenced area close to a critical switch.

COUNT TWO

[18 U.S.C. § 248(a)(3)]

On or about March 13, 2022, in Orange County, within the Central District of California, and elsewhere, defendant TIBET ERGUL intentionally damaged the property of a facility which provided reproductive health services, namely, a Planned Parenthood clinic. Defendant acted because the Planned Parenthood clinic was and had been providing reproductive health services.

E. MARTIN ESTRADA
United States Attorney

CAMERON L. SCHROEDER
Assistant United States Attorney
Chief, National Security Division

DAVID T. RYAN
Assistant United States Attorney
Chief, Terrorism and Export Crimes
Section

KATHRYNNE N. SEIDEN
Assistant United States Attorney
Terrorism and Export Crimes
Section

4